20470

Patsy Gregory WATFORD, Respondent, v. SOUTH CAROLINA STATE HIGHWAY DEPARTMENT, Appellant.

(236 S. E. (2d) 558)

*Daniel R. McLeod, Atty. Gen., Victor S. Evans, Dep. Atty. Gen., Stephen T. Savitz, Asst. Atty. Gen.,* of Columbia, and *Donald V. Myers,* of Lexington, and *Paul A. Sansbury,* of Darlington, *for Appellant,*

*Robert L. Kilgo,* of Darlington, *for Respondent,*

July 18, 1977.

Ness, Justice:

The sole issue presented on appeal is the propriety of an order granting a new trial to the plaintiff-respondent.

The action arose from a collision on a four lane highway in Florence County between the respondent's automobile and a Highway Patrol vehicle. The patrolman had made a U-turn in order to pursue a third car for a possible speeding violation when the respondent drove her automobile from a private driveway into the path of the Highway Patrol vehicle. The distance from the point of the U-turn to where she entered the highway is approximately 352 feet.

There was no testimony that the respondent stopped her car and/or looked prior to entering the highway. The officer testified that the first time he saw her vehicle was when he applied his brakes to avoid the collision. Respondent was severely injured in the accident and suffered a loss of memory. Her testimony concerning the details of the incident was therefore incomplete.

The jury returned a verdict for the defendant-appellant. Respondent then moved for a new trial on the grounds that the verdict was contrary to the evidence and was unfair under all the facts and circumstances. The motion was granted. We reverse.

A trial judge has the authority to grant a new trial when he finds the verdict to be contrary to the evidence.

"Ordinarily, the order of a trial judge granting a new trial on the ground that the verdict is contrary to the evidence is nonappealable. However, when it is manifest that the order for the new trial is founded upon fundamental error of law, it is axiomatic that this Court may review the decision." *S. C. State Highway Department v. Terrain, Inc.,* 267 S. C. 186, 195, 227 S. E. (2d) 184 (1976).

An abuse of judicial discretion, appearing in the record as a matter of law, warrants setting aside the grant of a new trial. *Jones v. Thomas and Hill, Inc.,* 265 S. C. 66, 216 S. E. (2d) 871 (1975); *Gray v. Davis,* 247 S. C. 536, 148 S. E. (2d) 682 (1966).

A trial judge may not invade the province of the jury or substitute his verdict for theirs. *Turner v. Carey,* 227 S. C. 298, 87 S. E. (2d) 871 (1955).

In explaining his reasons for setting aside the verdict, the trial judge made factual findings unsupported by the evidence. He concluded that the patrol car and third vehicle,

"Probably met and passed each other in the vicinity of the driveway from which the plaintiff entered the highway. Obviously, she must have been there at the time but neither the patrolman nor the couple in the Mustang [1] noticed her."

The record is devoid of evidence that the cars passed in the vicinity of the driveway or that the respondent was present but unobserved.

The judge's analysis of the incident is unwarranted; he said:

"There is no testimony as to whether the plaintiff stopped or did not stop before entering the highway. The officer did not see her until she was well on the roadway. The writer is hesitant to assume that the plaintiff failed to stop. Moreover, had the plaintiff stopped and looked in both directions, the collision might have occurred exactly as it did. She would have seen the southbound roadway clear for such a distance as would have allowed her more than sufficient time to cross it and enter the northbound roadway."

The trial judge commented as to the time frames just prior to the accident and stated:

"[i]mmediately before the patrolman turned left into the southbound lane, the plaintiff might well have been sitting, looking and checking both lanes the last time . . ."

---

[1] Third vehicle.

There was no testimony to support his time analysis or that she stopped, looked or checked before proceeding onto the highway.

"The officer did not see the plaintiff's car stopped at the entrance to the highway. Neither did he see her entering the highway. The reason for this is probably the fact that, as he testified, he was watching the red Mustang."

The trial judge had previously recognized the non-existence of any testimony indicating whether the respondent stopped, which is inconsistent with the finding that she in fact did stop. Furthermore, the officer testified regarding his first observation of the respondent's vehicle:

"Q. When exactly did you see the car? When was the first time you saw the car?

"A. When I applied my brakes.

"Q. And where was the car?

"A. The car's front hood was out blocking the right lane of traffic that I was in.

"Q. The front hood?

"A. Yes, sir, left front fender.

"Q. And where was the back of the car?

"A. I don't know. I didn't see it.

"Q. Where would you estimate it was?

"A. It was, evidently in the private drive."

(Tr. pp. 82-83, ff. 327-329).

The trial judge's "explanation" for his granting a new trial is based on factual conclusions which have no evidentiary support. His discretionary power to grant a new trial is "founded upon the facts, the evidence, the witnesses, the trial circumstances, the verdict and the judge's view of them." *South Carolina State Highway Department v. Townsend*, 265 S. C. 253, 258, 217 S. E. (2d) 778 (1975). Where the trial judge's reasons for granting a new trial are without evidentiary support, the new trial or-

der is erroneous as a matter of law. *South Carolina State Highway Department v. Clarkson,* 267 S. C. 121, 226 S. E. (2d) 696 (1976).

We reverse the trial court's order granting a new trial and reinstate the jury verdict.

LITTLEJOHN and GREGORY, JJ., concur.

LEWIS, C. J., and RHODES, J., dissent.

RHODES, Justice (dissenting) :

This Court has previously held that granting or denying a new trial upon the facts rests within the discretion of the trial judge. Furthermore, his discretion will not be disturbed unless his finding is wholly unsupported by the evidence, or the conclusion reached has been controlled by an error of law. *South Carolina State Highway Department v. Clarkson,* 267 S. C. 121, 226 S. E. (2d) 696 (1976). In *Clarkson,* we stated the following:

"An order granting a new trial on factual grounds is not appealable. But the question of existence or nonexistence of evidence is one of law; and to that extent such an order is subject to our review. . . . Our inquiry here must, therefore, be limited to the question of whether there was *any* evidence from which the jury might reasonably have inferred that respondent's [plaintiff's] injuries were proximately caused by negligence of the appellant. *If that question is answered in the affirmative the appeal must be dismissed, for this court has no power to weigh conflicting evidence in a law case.* But if there was no evidence of actionable negligence on the part of the appellant, there was no conflicting evidence to be weighed, and the order granting a new trial on the ground stated by the trial judge would be erroneous as a matter of law." [267 S. C. at 127, 226 S. E. (2d) at 697-698, quoting *Mims v. Coleman,* 248 S. C. 235, 149 S. E. (2d) 623 (1966). Emphasis added].

In the instant case, the highway patrolman involved in the collision testified. The plaintiff testified also; however,

she was unable to recount any of the events surrounding the accident because of a loss of memory, she having been severely injured in the collision. Although she was in no condition to give testimony contradictory to that of the patrolman, there were other witnesses for the plaintiff, and they presented evidence from which the jury might reasonably have inferred that the plaintiff's injuries were proximately caused by the defendant's negligence or recklessness.

Sergeant James Caulder of the State Highway Department testified that, upon Caulder's arrival at the scene of the accident, the highway patrolman involved therein, Mr. Willis, stated that he did not have his blue light or his siren turned on prior to impact with the plaintiff. Willis' testimony on direct examination was to the effect that he had made a U-turn to pursue a red Mustang in order to clock that vehicle for a possible speeding violation and that, while in pursuit of the Mustang, the plaintiff drove her vehicle from a private driveway directly in front of the Highway Patrol car.

Sergeant Caulder's testimony was corroborated by Lieutenant R. M. Sullivan of the Highway Department. Lieutenant Sullivan, like Sergeant Caulder, arrived at the scene after the collision. He testified that Willis stated to him that neither the blue light nor the siren was in operation prior to the time of impact. Sullivan further testified that Willis stated at the scene that he had attained a speed of 60 to 65 miles-per-hour just prior to hitting the plaintiff's vehicle. It is an undisputed fact that the posted speed limit for the area where the accident occurred is 45 miles-per-hour.

On direct examination, during the defendant's case in chief, Willis admitted that he had not turned on either his blue flashing light or the siren as he was pursuing the red Mustang. Additionally, Willis testified that he was going from 55 to 60 miles-per-hour in the 45 mile-per-hour zone at the time he collided with the plaintiff.

On the basis of this evidence, the court properly charged the jury with respect to several statutes in suuport of the

plaintiff's contention that Willis, as the defendant's agent-operator of the Highway Patrol vehicle, was driving in violation of the speed limit without utilizing the required warning signals for an emergency vehicle.[1]

The defendant further contends that the trial judge was controlled by an error of law in that the evidence as a whole pointed to the contributory negligence of the plaintiff as a matter of law. I do not agree.

The testimony adduced at the trial was to the effect that Willis made the U-turn across the median of the highway into the southbound lane in order to reverse direction and pursue the red Mustang. From the point of the U-turn to the point where the plaintiff entered the southbound lane of the highway the distance is approximately 352 feet. Moreover, Willis was accelerating his vehicle as he made the U-turn and began his chase of the Mustang reaching a speed of 55 to 65 miles-per-hour when he first saw the plaintiff's vehicle entering the highway. Although it cannot be precisely determined how much time elapsed between the U-turn and the collision, it is inferable from the testimony that only a few seconds intervened.

In the light of this evidence it cannot be held that the plaintiff was contributorily negligent as a matter of law in failing to keep a proper lookout or in failing to yield the right of way to Willis' vehicle. In the instant case all events occurred almost instantaneously, and the U-turn added an element of the unusual to the facts. Upon considering the evidence in the case as a whole, I am of the opinion that the trial judge was correct in concluding that the case required submission to the jury. Since there existed evidence requir-

---

[1] The court charged the following statutes, among others: S. C. Code (1976) § 56-5-760 ("Operation of authorized emergency vehicles; privileges and conditions"); § 56-5-770 ("Signals in connection with operations of authorized emergency vehicles"); § 56-5-780 ("Duty of driver of authorized emergency vehicle"); § 56-5-4700 ("Audible signal devices and signal lamps for authorized emergency vehicles, school buses and police vehicles; restrictions on use; effect of use").

138

ing such submission, it is evident that the trial judge did not err in granting a new trial on the grounds stated.

For these reasons I would affirm.

LEWIS, C. J., concurs.